**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-00030-MSK-NYW

WALID MOAZ,

      Plaintiff,

v.

CITY & COUNTY OF DENVER;
DENVER INTERNATIONAL AIRPORT; and
DENVER POLICE DEPARTMENT,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO DISMISS
---

      **THIS MATTER** comes before the Court pursuant to the Defendants' (collectively,

"Denver") Motion to Dismiss **(# 49)**, and Mr. Moaz's response **(# 61)**.

## FACTS

      According to Mr. Moaz's[1] Amended Complaint **(# 23)**, Mr. Moaz is a Colorado resident

of Egyptian descent.  He is employed as a limousine driver.  His pleading is somewhat

disorganized and difficult to follow, but as best the Court can determine, it recites the following

events:

---

[1]       Mr. Moaz proceeds in this action *pro se*, but his Amended Complaint was drafted and
filed by counsel pursuant to D.C. Colo. L. Atty. R. 5(a)(2).  Because Denver's motion attacks the
sufficiency of that Amended Complaint, this Court has some doubt that Mr. Moaz is entitled to
the liberal construction required of *pro se* pleadings under *Haines v. Kerner,* 404 U.S. 519,
520-21 (1972).  Nevertheless, because Mr. Moaz's briefing in response to the motion is
undertaken *pro se*, and because the outcome of this decision is not affected in any event, the
Court will grant Mr. Moaz the liberal construction of *Haines* in all respects in this case.

• On an unspecified date, Mr. Moaz "reported threats to [the Denver] Police which had been made against him." In response, the police charged Mr. Moaz with making a false complaint and did not charge the person who threatened him. *Docket # 23,* ¶ 15. This allegation may or may not be related to an incident on October 11, 2015, in which Greg Gustin, a Ground Transportation Agent (possibly at Defendant Denver International Airport, or "DIA"), told Mr. Moaz "I wish I can shoot you people." ¶ 19. It may or may not also be related to an incident on June 16, 2016, in which Mr. Moaz "called police after receiving threats against Andy Ansere," and that thereafter, he was "ticketed for not following rule of [the] airport." *¶ 44.*

• On an unspecified date, while picking up a client at DIA, Mr. Moaz "was arrested on allegations of threats towards another but was eventually released." ¶ 16. It is not clear whether this event is the same as an incident on August 30, 2016, when Mr. Moaz "was arrested for alleged threat to another." ¶ 43.

• On two occasions, Mr. Moaz's prayer rug was "thrown into the trash while [Mr. Moaz] was at DIA." ¶ 17. The Amended Complaint alleges that, on at least one occasion, an individual named Thomas Berzinskas was the perpetrator, but does not identify Mr. Berzinskas' title. ¶ 75. Mr. Berzinskas referred to the rug as a "magic carpet" in front of others.

• On four separate occasions (all unspecified), Denver police cited Mr. Moaz for "solicitation," based on complaints from Ground Transfer Agents. ¶ 18.

• In September 2016, an unspecified entity cited Mr. Moaz for 15 violations of the Denver Municipal Airport System's Rules and Regulations. Mr. Moaz appealed that citation and 7 of the violations were dismissed. Mr. Moaz was apparently found guilty of the remaining 8 citations and was suspended from working at DIA for a period of 90 days. ¶ 20, 45.

As to each of these contentions, Mr. Moaz alleges that they constitute discrimination on

the basis of his national origin and/or race in violation of the rights secured by the Equal

Protection clause of the 14th Amendment, thereby giving rise to a cause of action against Denver

under 42 U.S.C. § 1981, § 1983, and § 1985[2].

Mr. Moaz further alleges:

• During an unspecified time period, Mr. Moaz "had been having problems with DIA Ground Transportation" agents, who would "follow[ ] him around at the airport, constantly checking his entry passes and interrogating [him] and his clients." Mr. Moaz complained of this treatment to an individual named Mike Percy, apparently the Ground Transportation Manager at DIA, informing Mr. Percy that Mr. Moaz would file a lawsuit if the behavior did not cease. Mr.

---

[2]     Mr. Moaz's Third Cause of Action also alleges an Equal Protection claim under § 1981 and 1983 arising from his arrests and citations. It is not clear how this claim differs from Mr. Moaz's First Cause of Action.

Moaz alleges that, thereafter, he has "received numerous tickets for solicitation, threats, and use of foul language from the Police and DIA." ¶ 40-42.

Based on this contention, and the June 2015 incident involving Mr. Ansere, Mr. Moaz alleges that Denver has retaliated against him for the exercise of rights secured by the First Amendment to the U.S Constitution, in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 12203 ( prohibiting discrimination against persons for opposing discrimination under the Americans With Disabilities Act).

Next, Mr. Moaz alleges a common-law claim of defamation, apparently under Colorado law, based on the following events:

• On several unspecified occasions, an individual named Pat Temporino referred to Mr. Moaz's car as a "camel," a remark that was overheard by several others. ¶ 70.

• On March 3, 2015, Mr. Percy wrote a letter falsely accusing Mr. Moaz of paying an ex-employee of Denver to provide Mr. Moaz with passengers. That letter was placed in Mr. Moaz's file and was seen by others. ¶ 71. On November 25, 2015, Hareld Hensley, Director of Parking and Transportation, wrote a letter falsely accusing Mr. Moaz of violating a rule (identified only by its number). This document was also placed in Mr. Moaz's file and seen by others. ¶ 72.

• On August 17, 2016, Mr. Moaz was attempting to pick up a client at DIA. An individual named Tom Berzinskas approached the client, telling her "of Plaintiff's 'hostile environment' at DIA." ¶ 74. On that same date, Mr. Berzinskas told another person that Mr. Moaz "is sick in the fucking head" and stated that Mr. Percy should revoke Mr. Moaz's permit. ¶ 76.

• On October 12, 2016, a Ground Transportation Agent named Julie Weinheimer called Mr. Moaz a "thief" and cited him for solicitation. Her comments were heard by others. ¶ 77.

• On November 15, 2015, an unidentified Ground Transportation Manager accused Mr. Moaz of solicitation and called him a "damn Arab." That comment was heard by others. ¶ 78.

Finally, Mr. Moaz alleges a common-law claim for tortious interference with contract, apparently under Colorado law, arising from 10 instances, occurring between November 23, 2015 and October 12, 2016, in which the preceding events occurred or in which various

individuals prevented Mr. Moaz from picking up clients for various reasons. None of the clients have rebooked with him. ¶ 86-95.

Denver moves **(# 49)** to dismiss Mr. Moaz's claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Specifically, it contends: (i) that the Denver Police Department and DIA are not entities that have an existence independent from the City of Denver itself, and are thus not proper parties to the suit; (ii) Mr. Moaz has not identified any personal participation in any of the constitutional deprivations by an individual state actor, requiring dismissal of his § 1983 claims, and that his allegations of *Monell* liability for Denver itself are insufficient; (iii) his First Amendment retaliation claim fails because he has not alleged facts suggesting any causal nexus between his complaint to Mr. Percy and the actions taken against him; and (iv) his common-law claims are barred by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101 *et seq.*

## ANALYSIS

### A.  Standard of review

For purposes of a challenge to subject-matter jurisdiction based on the facial allegations in the Amended Complaint, the Court treats those facts as true. *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). Mr. Moaz bears the burden of alleging facts sufficient to demonstrate the existence of jurisdiction. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 864, 878 (10th Cir. 2017).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). The Court must limit its consideration to the four corners

of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### B. Subject-matter jurisdiction

Although Denver's motion does not clearly delineate its subject-matter jurisdiction challenges, the Court perceives two: (i) the contention that the Denver Police Department and DIA are not entities that are subject to suit; and (ii) the contention that Mr. Moaz's tort claims are barred by the CGIA.

It is well-settled that the Denver Police Department is not an entity that is subject to separate suit from the City of Denver itself. *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985). Accordingly, claims against the Denver Police Department are effectively claims against

the City of Denver itself, and thus, the claims against the Police Department are dismissed for lack of subject-matter jurisdiction.

The question is less clear with regard to the status of DIA. Denver explains that "Denver International Airport" is just a d/b/a name used by the City to refer to the Denver Department of Aviation. Denver does <u>not</u> argue, in any meaningful way, as to why the Denver Department of Aviation is not itself subject to suit. To the contrary, Denver describes the Department of Aviation as "a separate entity," suggesting that it has a legal existence separate from that of the City of Denver, making it an appropriate party to a lawsuit. In such circumstances, the Court will not dismiss DIA as a party to this action but will correct the caption of the case to properly identify it as the "Denver Department of Aviation." *See Mays v. Wyandotte County Sheriff's Dept.*, 419 Fed.Appx. 794, 795 n. 2 (10th Cir. 2011).

Finally, the Court agrees with Denver that the CGIA grants Denver (and the Department of Aviation) immunity from Mr. Moaz's defamation and tortious interference claims based on Colorado law. Both Defendants are public entities as defined by C.R.S. § 24-10-103(5). Pursuant to C.R.S. § 24-10-106(1), those entities are immune from all tort claims unless the claim falls within one of several specific statutory waivers. None of the statutory waivers would appear to apply to Mr. Moaz's defamation or tortious interference claims. Accordingly, the Defendants appear to enjoy sovereign immunity as to Mr. Moaz's tort claims, and those claims are therefore dismissed for lack of subject-matter jurisdiction. *Dorsey v. Pueblo School Dist. 60*, 140 F.Supp.3d 1102, 1109 (D.Colo. 2015).

### C. Failure to state a claim

Denver's Rule 12(b)(6) motion focuses on Mr. Moaz's § 1983 claims; it does not refer to his claims under § 1981, 1985, or the ADA. Denver primarily argues that: (i) Mr. Moaz has not

alleged facts sufficient establish a *Monell*-type claim against Denver or the Airport Authority, (ii)

Mr. Moaz has not adequately alleged the personal participation of any particular employee of

one of the Defendants; (iii) Mr. Moaz has not alleged facts showing any causal connection

"between remarks either said or heard by supervisors and those actions taken by other

individuals" (including his complaint to Mr. Percy and the citations that followed); and (iv) Mr.

Moaz has not pled facts indicating a basis to believe that any adverse action taken against him

were due to his national origin for Equal Protection purposes.

Because Mr. Moaz has named only Denver and the Department of Aviation as

Defendants, not individual public employees, his claims are subject to the standards of *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978). *Monell* explains that an employing entity,

such as Denver, is not vicariously or automatically liable for constitutional deprivations

committed by its employees; rather, the entity can only be held responsible if the constitutional

deprivation allegedly resulted from "a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers." *Id.* at 690. Thus, to adequately

allege a claim against Denver or the Department of Aviation, Mr. Moaz must plead facts that

show: (i) that a particular representative of Denver or the Department of Aviation, having policy-

making authority for that body, promulgated, created, or implemented a policy; (ii) that the

policy caused Mr. Moaz to suffer a constitutional deprivation; and (iii) that the representative

acted intentionally or recklessly in the face of the risk that the policy would lead to constitutional

violations. *Harte v. Board of County Commissioners*, 864 F.3d 1154, 1194 (10th Cir. 2017).

The Court first observes that, with one possible exception, Mr. Moaz has not identified

any person – by name or by title – who would arguably have policy-making authority on behalf

of Denver or the Department of Aviation. The Amended Complaint mostly identifies

unidentified police officers who (allegedly improperly) issued citations to Mr. Moaz, but does not identify any official within the Police Department who allegedly developed or imposed a policy or directive that resulted in improper issuance of the citations. Mr. Moaz identifies an array of named and unnamed Ground Transportation Agents who he contends harassed him in various ways, but he does not allege any facts that tie such harassment to a custom, directive or policy of the Department of Aviation. The sole exception is Mr. Moaz's references to Mr. Percy as "Ground Transportation Manager" of the Department of Aviation. Based on Mr. Percy's title, and the fact that Mr. Moaz implicit allegation that Mr. Percy had the ability to direct the actions of the Ground Transportation Agents who were harassing him, it may be that Mr. Percy has the type of final policymaking authority as to matters of employee discipline sufficient to satisfy the first *Monell* element. *See e.g. Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998).

However, the Court cannot say that Mr. Moaz has met any of the other *Monell* elements with regard to Mr. Percy. He has not alleged that Mr. Percy created, developed or implemented a custom, policy or directive that was likely to lead to a deprivation of Mr. Moaz's Equal Protection rights. The Amended Complaint states only that Mr. Moaz complained to Mr. Percy, that Ground Transportation Agents would "follow[ ] him around at the airport, constantly checking his entry passes and interrogating [him] and his clients"; he does not allege that he stated to Mr. Percy that he believed that he was receiving this treatment because of his national origin. Even if the Court were to assume that Mr. Percy took no action in response to Mr. Moaz's complaint (and assuming that such inaction could itself be considered a "policy" decision by the Department of Aviation, a question this Court need not resolve at this time), if Mr. Percy was not aware that Mr. Moaz suspected that national origin discrimination was to blame for his treatment, Mr. Moaz has not sufficiently alleged that Mr. Percy's inaction

intentionally or recklessly caused further acts of discrimination against Mr. Moaz. Thus, the Court cannot say that Mr. Moaz has adequately pled a *Monell* claim against either Denver or the Department of Aviation on his Equal Protection claim.

As to Mr. Moaz's First Amendment claim, the outcome is the same. He alleges that he complained to Mr. Percy about ongoing harassment and citations he was receiving, and that thereafter, he continued to be harassed and receive citations. Even if the Court were to again assume that Mr. Percy was a policymaker for the Department of Aviation in this regard, Mr. Moaz has not alleged facts that show that Mr. Percy <u>did anything</u> in response to Mr. Moaz's complaint, other than allowing the existing harassment to continue. A claim for First Amendment retaliation requires a showing that Mr. Percy took some affirmative and retaliatory action against Mr. Moaz <u>because of</u> and in response to his complaint. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). It is not sufficient for Mr. Moaz to contend that Mr. Percy did nothing or simply ignored his complaint, as the First Amendment does not impose any affirmative obligation on the government to listen or respond to a person's speech. *See e.g. Smith v. Arkansas State Hwy. Employees Local 1315*, 441 U.S. 463 , 465 (1979). Without an allegation that Mr. Percy affirmatively directed his employees to file <u>more</u> citations against Mr. Moaz or to <u>increase</u> their harassment of him, Mr. Moaz has failed to state a claim for First Amendment retaliation against either Defendant here.

Accordingly, the Court finds that Mr. Moaz has failed to allege facts sufficient to impose *Monell* liability on either the City of Denver or the Division of Aviation for alleged violations by public employees of his First Amendment and Equal Protection rights under 42 U.S.C. § 1983. Those claims are therefore dismissed. Moreover, although Denver did not attack Mr. Moaz's separate § 1981 and § 1985 claims on this ground, the Court will exercise its authority to *sua*

*sponte* dismiss those claims under Fed. R. Civ. P. 12(b)(6) for the same reasons.  *See Jett v. Dalls Ind. School Dist.*, 491 U.S. 701, 734-35 (1989) (*Monell* analysis applies to § 1981 claims); *Kulkarni v. Upasani*, 659 Fed.Appx. 937, 939-40 (9th Cir. 2016) (*Monell* analysis applies to § 1985 claims).  The Court also *sua sponte* dismisses Mr. Moaz's claim for retaliation in violation of the ADA, as Mr. Moaz has not alleged any facts to establish that he was opposing any act of disability discrimination prohibited by that Act when complaining to Mr. Percy.  42 U.S.C. § 12203.  This disposes of all of Mr. Moaz's claims, requiring dismissal of this action in total.[3]

## CONCLUSION

For the foregoing reasons, Denver's Motion to Dismiss **(# 49)** is **GRANTED**.  All claims in this action are **DISMISSED** and the Clerk of the Court shall close this case.

Dated this  14th  day of December, 2017.

BY THE COURT:

_____

Marcia S. Krieger
Chief United States District Judge

---

[3]      Mr. Moaz did not request leave to amend his complaint to cure any defects, and given the fact that Mr. Moaz's Amended Complaint was drafted by counsel – and presumably reflects his best efforts to state a claim – the Court will not reflexively grant him leave to do so.  To the extent Mr. Moaz believes he can state claims against individual defendants or otherwise cure the defects noted herein, he may make an appropriately-supported motion, attaching the proposed amended pleading.